### WOBURN.

*It is essential to the validity of an election, that the selectmen, by whom it is conducted, should be previously sworn to the faithful discharge of the duties of their office.*

JONATHAN THOMPSON, Jr., and others, having called in question the election of John Wade, Stephen Nichols, and Oliver B. Cooledge, returned as members from the town of Woburn, the committee on elections, to whom the petition was referred, reported thereon as follows :—

" After a long and minute investigation of the evidence, both for and against the different allegations, contained in the petition, they have come to the following conclusions. The different charges made by the petitioners, to invalidate the election of the members from Woburn, are recited in the order in which they were considered by the committee, and their opinion follows each allegation.

1st Allegation. ' One citizen was seen to vote twice, at the first balloting for a representative, and his vote, the last time, was received in an improper place, and out of the order of the

[1] 56 J. H. 84.

check list, by Captain Stephen Nichols, one of the presiding selectmen, and one of the representatives returned, and was by him conveyed into the ballot box, without any examination of the check list.'

The evidence in support of this allegation, did not satisfy the committee that the selectmen were aware of the fact, that an individual had voted twice; and even that fact of itself was left in doubt, for the evidence in regard to the deposit of different ballots, by the same person, was, in some particulars, contradictory.

2d Allegation. 'While the first ballot for a representative was counting, the chairman of the selectmen, (Col. John Wade,) who was the first representative returned, was seen to take from the ballots cast, two papers containing names, which he afterwards put into his pocket.'

This allegation was substantially proved, but your committee were of the opinion, that the two pieces of paper were withdrawn by Col. Wade upon the ground that they were not ballots, and that they had been deposited by mistake. They were openly taken from the box, and the evidence clearly showed that there was no intent to do wrong, on the part of the presiding officer.

3d Allegation. 'During a moment of excitement, there was a press towards the selectmen's desk, and several persons were seen to raise their hands, and to drop votes into the ballot box on the table, of all which no notice appeared to be taken by the presiding officers, nor were any names checked.'

The evidence sustained this allegation, but the committee believe the charge to be immaterial, because no illegal voting was shown to have taken place.

4th Allegation. 'That the votes for a first representative were erroneously counted by Capt. Stephen Nichols, there being more counted for John Wade than he actually received.'

The evidence introduced to support this charge was not, in the opinion of the committee, sufficient to authorize them to consider the allegation as proved.

5th Allegation. 'That while the ballots were counting for

the first representative, certain papers, having every appearance of ballots, were swept from the table, by John Wade, Esq., at that time one of the candidates.'

The fifth allegation was so far sustained by the evidence, as to shew, that papers were swept from the table, but it did not appear to the committee, that those papers were ballots, although the witnesses testified that they had that appearance.

6th Allegation.  ' The chairman of the selectmen declared the whole number of votes, on the first ballot, to be 320, of which 162 were for himself, and thereupon he declared himself to be elected.  By the record, made by the clerk, it appears, that the whole number was 320, that John Wade had 162, John Cummings, 124, Joseph Gardner, 20, Stephen Nichols, 7, Benjamin Wyman, 4, and scattering, 3; which record is not true, because Benjamin Wyman had thirteen votes, instead of four.'

This allegation was fully supported by the evidence.  Thirteen votes were proved to have been deposited in the ballot box for Benjamin Wyman, which votes, with the exception of four, were, by some error or accident, omitted in the statement of the result of the ballot.  The evidence on this point was voluminous, and the committee could not insert even an abstract of it, without extending their report to a most undesirable length.  They will, however, briefly state, that after the ballot box was turned, a portion of the votes were counted by Charles Carter, Esq., one of the selectmen.  Among those ballots, four were found to contain the name of Benjamin Wyman.  The residue of the votes were sorted by Col. Wade and Capt. Nichols.  All the votes, however, for Col. Wade, were counted by Capt. Nichols, and it appeared by the evidence that Col. Wade took no part in counting any of the ballots.  As the number for each candidate was ascertained, the amount was given to Oliver B. Coolidge, the town clerk, to be recorded; but in stating the result of each, to the town clerk, the tone of voice was so low that the number could not be heard by the spectators.  The committee will here remark, in passing over this part of the case, that the town clerk is

one of the sitting members, embraced in the petition.   And although it appeared by the evidence, that he wrote down the number of ballots each candidate had received, yet he did not assist, either in counting or assorting the votes; and it was equally clear, that he did not cause, or in any way partake of, the error that occurred.   After the computation had been made, the result was declared by Col. Wade, as contained in the above allegation.   The loss of the nine votes for Benjamin Wyman must have happened, either during the process of assorting by Col. Wade, or in the act of counting by Capt. Nichols: or else, they were lost in a way to which the evidence furnishes no clew.   As there was no testimony to shew fraud on the part of Col. Wade or Capt. Nichols, and as they were in presence of, and almost in contact with, an hundred watchful opponents, it would seem, that any attempt on their part to frustrate the will of the majority, by an act of unfairness, would have been, under the circumstances of this case, impossible.   The nine votes given for Benjamin Wyman were, nevertheless, lost.   Had they been counted, they would have changed the majority.   The whole number would have been 329: necessary to a choice, 165; and John Wade having received only 162, would not have been elected.   The committee, therefore, are of the opinion, that the omission of the nine votes abovementioned is fatal to the validity of the election of John Wade.

7th Allegation.   'The selectmen were not sworn until some days after the votes were received, sorted, counted, declared, and recorded.'

The fact asserted in this allegation was admitted by the counsel for the sitting members.   They contended, however, that the omission did not affect this election; 1st, upon the ground, that no oath was required of selectmen, to qualify them to preside at the election of representatives to the state legislature; 2d, that if the stat. 1833, c. 141, did require the oath, then the omission might render the selectmen liable to a penalty, but could not be construed to make void the election. These questions depend upon the construction of the act of

39

the 19th of March, 1833. The first section of that act makes it the duty of the selectmen, 'to make and seal up a separate list of the persons voted for, as governor, lieutenant-governor, councillors and senators, and representatives in the congress of the United States, and transmit the same to the secretary of the commonwealth or to the sheriffs of their respective counties.'

The second section is in the words following: 'Be it further enacted, that the selectmen of the several towns and districts shall hereafter, before they enter upon the execution of their official duties, take an oath or affirmation, before a justice of the peace, or the clerk of the town or district in which they are selectmen, faithfully and impartially to discharge those duties, respecting all elections and the returns thereof, and that a certificate of such oath or affirmation shall be recorded in the town or district records.'

On the part of the sitting members, a most elaborate and ingenious argument was made, to shew, that the words 'those duties,' in the second section of the above recited act, referred to the election of the different officers, recited in the first section of the same statute; the votes for whom they are required in separate lists 'to make and seal up,' and transmit to the secretary of state; and that inasmuch as there was no mention of members of the house of representatives of this state in that section of the act of 1833, it was manifestly not the intent of the legislature to require any oath of the selectmen, to qualify them to preside at the election of the last mentioned members.

To this argument, the committee believe, that a brief and most conclusive answer is to be found in the language of the statute itself. And the question is to be settled by the construction of that statute, upon the ordinary and well known rules, that not only govern the construction of other statutes, but of rules that do also govern the construction of the language in which they are couched. The question is, what is the antecedent to the words 'those duties,' in the second section of the act of 1833? And the answer must be 'their official duties.' To make the duties of sealing up and transmitting the votes for governor, lieutenant-governor, &c., men-

tioned in the first section of the act, the antecedent, would require a strained construction of the language of the statute, and, clearly, at the expense of the true and obvious intent of the legislature. Further than this. Such a construction would require a restricted meaning to be given to the words, ' all elections and the returns thereof,' and this could not be done, without violating a well known rule, applied to the construction of statutes.

The committee, therefore, have come to the conclusion, that selectmen are required by law to be sworn, before they proceed to discharge their duties in relation to the election of representatives to this house.

The above conclusion brings us to the consideration of the second question, viz : Does the neglect of the selectmen, to take the oath prescribed by the statute of 1833, render the election void.

In a government like ours, the fundamental principle should never be lost sight of, even for a moment. The will of the majority must govern. To ensure this, the people, through their authorized agents, have enacted laws, admirably designed to secure the desired end; and their jealous vigilance cannot be too much commended; for, upon the purity of the ballot box, depends the sovereignty of the people. Among other grounds, which the legislature have adopted to protect this important right, they have seen fit to require the sanction of an oath from those officers, who are about to receive, sort, and count the ballots of the people. This oath, too, is required by an imperative statute, which says that the selectmen shall be sworn, before they enter upon their official duties in relation to ' all elections and the returns thereof.' If this provision was intended as a guard to ensure the purity of an election, why should it be withdrawn ? In all cases, this house has the power, constitutionally, to set aside the provisions of law, however positive, and admit the person returned to a seat, even though every statutory provision was violated in his election. Would it be wise to adopt such a course ? The answer cannot be otherwise than in the negative. And if the aggregate

of checks ought not to be set aside, why should they be dispensed with individually? As yet the sanction of an oath has always been required, and neither reason nor authority has been shown, to set aside this solemn provision of the law. It is a matter of great importance to the community, that this house should settle the questions now presented upon sound principles, in order that their decision may hereafter be cited as a well established precedent. In view of such a decision, the committee have gone further into the subject, perhaps, than was necessary. And yet, they have left many considerations untouched, that have had great weight in bringing their minds to the conclusion that follows, viz.: That the omission of the oath is fatal to the validity of the election, and that Col. John Wade, Capt. Stephen Nichols, and Oliver B. Coolidge, Esq, returned as members of this house, from the town of Woburn, are not by law entitled to their seats."

The foregoing report was agreed to, after a discussion thereof, on two several days, by a vote of 318 to 88, " as to the seventh allegation therein, and the conclusion of the committee of elections thereupon, that the said election is void ;" and as to the residue, it was indefinitely postponed, without a division.[1]

The members were allowed their pay up to and including the day of the acceptance of the report.[2]

A precept was afterwards issued to Woburn, for the election of members, in the place of those, whose election was thus declared void, and the same gentlemen were again returned and took their seats.